UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GARRY P. FREY,

      Plaintiff,

  v.

SPOKANE COUNTY FIRE
DISTRICT NO. 8, a Washington
municipal corporation,

      Defendant.

NO.  CV-05-289-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Ct. Rec. 10).  A hearing was held on the motion on August 29, 2006.  Plaintiff was represented by Mary Giannini and R. Max Etter, Jr.  Defendant was represented by Stephanie Alexander.

### BACKGROUND FACTS

Plaintiff Garry Frey was employed with the Spokane County Fire District (SCFD) No. 8 from 1995 to 2004, when he resigned.  During his tenure at the SCFD No. 8, he worked as a EMS Officer, as a Deputy Chief, and also held the title of Assistant Chief for a six-month period in 2001/02.  When Plaintiff was first employed as a Deputy Chief, he understood that his job was exempt under the Fair Labor Standards Act (FLSA), which meant that he would not qualify for overtime pay.  Plaintiff asserts that as the years passed in which he was Deputy Chief, he was assigned more duties, and much of the work he did was considered nonexempt

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

under the FLSA.

Spokane County Fire District No. 8 consists of four (4) stations.  The administrative hierarchy of SCFD No. 8 is set forth on Page 113 of Ct. Rec. 10. There is one Chief that reports to the Board of Commissioners.  Three Deputy Chiefs report to the Chief.  Each Deputy Chief is responsible for various divisions or units.  The chain of command under the Deputy Chiefs is Captains, then Lieutenants, and finally Firefighters (Def. St. of Mat. Facts 11).

The SCFD is staffed by career firefighters, as well as volunteer firefighters. The firefighters are specifically assigned to fight fires, and to clean and perform routine maintenance on equipment, vehicles, the station grounds and the facilities. In 2001, SCFD No. 8 had approximately 15 full-time career firefighters, 10 part-time firefighters, 16 resident firefighters, and 44 volunteer firefighters.  In 2002, SCFD No. 8 had approximately 13 full-time career firefighters, 12 part-time firefighters, 15 resident firefighters, and 43 volunteer firefighters.  In 2003, SCFD No. 8 had approximately 15 full-time career firefighters, 15 part-time firefighters, 11 resident firefighters and 42 volunteer firefighters.  During these years, SCFD No. 8 employed at least one full-time administrative assistant employee, at least one part-time file clerk, who assisted the deputy chiefs with filing projects, and clerical staff who were assigned duties such as answering the telephones for the District, distributing mail, data entry for accounts payable, and filing.

The following are a list of management duties that Plaintiff, as Deputy Chief, was responsible for during the years 2001-2003.  These are set forth in Defendant's Statement of Facts and are not opposed by Plaintiff:

(1)    Responsible for managing and supervising career firefighters and officers and maintenance specialists, and at some point, for managing the part-time firefighters (Def. Statement of Material Facts (DSMF) 8, 9, 10);

(2)    Responsible for managing several divisions of SCFD No. 8, including

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

risk management, EMS training, and maintenance of facilities and apparatus; (DSMF 13);

(3)    Responsible for personnel management duties, which included interviewing, hiring, supervising assigned staff, assigning duties to career personnel, approving leave requests, addressing personnel issues, and overseeing the employee promotional and exiting processes under the Collective Bargaining Agreement (DSMF 14);

(5)    Ensure that sufficient personnel was available to meet District's mission and research and recommended employee policies (DSMF 14);

(6)    Review schedule to ensure that schedules prepared by Lieutenants properly covered all necessary shifts (DSMF 15);

(7)    Organize Wellness Program, which included choosing and purchasing exercise equipment for firefighters, and setting up the location for the exercise program (DSMF 17);

(8)    Manage the District's EMS program, which included ensuring training and procedures were followed (DSMF 18);

(9)    Manage Ongoing Training Evaluation Program, which included making sure firefighters were in compliance with the training requirements of the Department of Health (DSMF 19);

(10)   Responsible for risk management and acted as District Safety Officer. Risk management included: investigating all District accidents involving equipment or personnel, and addressing and making recommendations in relation to workers compensation and L & I claims, documenting and maintaining accurate records, and looking out for the welfare of the district personnel (DSMF 20, 21);

(11)   Oversee entire collective bargaining process; was a member of the negotiating team for negotiating firefighters pay; responsible for

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

responding to employee grievances and ensuring compliance with CBA (DSMF 22);

(12)  Responsible for managing the budget for department/division and assisting in planning and implementing and developing the budget for the District's policies and procedures (DSMF 23);

(13)  Code incoming invoices, which included approval of order and amount to be paid; directing payment of invoice out of particular budget number (DSMF 24);

(14)  Coordinate and supervise proper maintenance of all District's apparatus and facilities; supervise maintenance staff and develop training program; maintain records for apparatus and equipment; test apparatus and equipment; and make adjustments to dispatch system settings with Chief's approval (DSMF 25, 26);

(15)  Order and maintain supplies for the stations (DSMF 27); and

(16)  Review and recommend changes to Standard Operating Procedure manual (DSMF 28);

While Deputy Chief, Plaintiff also had responsibilities as an 820 call duty officer.  Plaintiff acted as the 820 call duty officer about 9 times a month—except when other staff were on vacation, it could be higher than that.  The 820 call duty officer wore a digital pager that notified the on-call duty that there was an incoming call to the station.  The 820 call duty officer would utilize the pager, cell phone, and radio while responding to or monitoring calls.

According to Plaintiff, the 820 call duty officer was the officer of the day representing the Chief in any manner.  Specifically, the 820 call duty officer would respond to calls, based on the Standard Operating Procedure criteria.  If the call was a large scale call, then the 820 call duty officer would respond.  This included going to the scene and assisting the incident commander as needed.  Assistance could mean being in charge of a division that was responding to the fire, although this

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

occurred only occasionally. Plaintiff estimated that he fought fires less than 5 times a year when acting as the 820 call duty officer.

If the call was an aid call, the officer would monitor the call. Monitoring included listening to the radio, and determining if anything needed to be done. While on-call, the 820 call duty officer did not have to stay at the station if they lived close enough to the SCFD boundary. Plaintiff stated that although there was not a specific response time, the unwritten rule was that the on-call officer had to be able to respond within 5-10 minutes. The only restriction placed on the on-call duty officer, other than response time, was that they were not allowed to drink alcohol or attend movies while on-call.

Plaintiff also asserts that he performed the following nonexempt tasks while employed as Deputy Chief:[1]

    (1)    Document and maintain various District records;

    (2)    Assist in budgeting, including gathering budget information and putting in it budgeting format;

    (3)    Respond to emails and phone calls from staff, constituents, vendors, regulatory agencies;

    (4)    Review and process invoices, including coding invoices with bar codes;

    (5)    Maintain, fill out, and file records for equipment testing;

    (6)    Check off and file supplies;

    (7)    Monitor shop equipment and tools;

    (8)    Meet with vendors, staff, resident firefighters, and volunteer firefighters as needed;

    (9)    Input equipment and apparatus information cards regarding different kinds of calls;

---

[1]Defendant does not dispute that Plaintiff undertook these tasks.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

(10)   Check time-off requests and match them with approvals;

(11)   Type letters and memos according to whatever the need was;

(12)   Work on maintenance bids for the station;

(13)   Fight fires when needed;

(14)   Move apparatus to stations for preventive maintenance;

(15)   Prepare burn tower for training;

(16)   Help out at the various stations moving equipment for repairs;

(17)   Repair equipment in stations such as leaky faucets and sprinkler systems;

(18)   Pull and spray weeds and trim trees and bushes and other grounds maintenance;

(19)   Shovel and plow snow;

(20)   Paint the facilities;

(21)   Repair cracks in cement, repair windows and other facility maintenance;

(22)   Install radios, lights and sirens in vehicles;

(23)   Pick up oxygen supplies;

(24)   Pick up parts and supplies for EMS services;

(25)   Miscellaneous housekeeping at the station, such as cleaning bathrooms and other facilities;

(26)   Put chains on snow plow;

(27)   Fix drier vents;

(28)   Perform blood pressure tests, and

(29)   Purchase painting supplies for the stations.

(Ct. Rec. 14).

Plaintiff brings this present action seeking overtime pay in the amount of one and a half times his hourly rate for all the time he worked on nonexempt duties, based on the Fair Labor Standards Act, and the Washington Minimum Wage Act.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

1  Plaintiff has calculated his overtime pay to include the time he spent "on-call."

2  Plaintiff also asserts a claim for breach of contract for unpaid wages.

3      Defendant moves for summary judgment, asserting that Plaintiff is an exempt

4  employee under the Fair Labor Standards Act and the Washington Minimum Wage

5  Act, and therefore, does not qualify for overtime pay.  Defendant also asserts that

6  Plaintiff's breach of contract claim is preempted by the Fair Labor Standards Act.

7

8                                **ANALYSIS**

9  **I.     Standard of Review**

10     Summary judgment is appropriate if the "pleadings, depositions, answers to

11 interrogatories, and admissions on file, together with the affidavits, if any, show

12 that there is no genuine issue as to any material fact and that the moving party is

13 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is no genuine

14 issue for trial unless there is sufficient evidence favoring the nonmoving party for a

15 jury to return a verdict in that party's favor.  *Anderson v. Liberty Lobby, Inc.,* 477

16 U.S. 242, 250 (1986).  If the nonmoving party "fails to make a showing sufficient to

17 establish the existence of an element essential to that party's case, and on which the

18 party will bear the burden of proof at trial," then the trial court should grant the

19 motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When considering a

20 motion for summary judgment, a court may neither weigh the evidence nor assess

21 credibility; instead, "the evidence of the non-movant is to be believed, and all

22 justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

23     The determination of whether an employee qualifies for an exemption under

24 the Fair Labor Standards Act is a question of law.  *Cleveland v. City of Los Angeles*,

25 420 F.3d 981, 988 (9th Cir. 2005).  Factual determinations regarding how the

26 employee spent his time and the nature of the employee's duties are questions of

27 fact that must be decided by the trier of fact.  *Ballaris v. Wacker Siltronic Corp.*,

28 370 F.3d 901, 910 (9th Cir. 2004) ("The nature of the employees' duties is a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

1  question of fact, and the application of the FLSA to those duties is a question of
2  law.").

3      In his response to Defendant's Motion for Summary Judgment, Plaintiff
4  objects to seven of Defendant's statements of fact.  For purposes of summary
5  judgment, the Court will not consider the disputed statements of fact.  The Court
6  considered Defendant's uncontested Statements of Material Facts and Plaintiff's
7  Statements of Material Facts in deciding Defendant's motion.  As there are no
8  genuine issues of material fact, this case is ripe for summary judgment.

9  **II.    Fair Labor Standards Act Claim**

10     The FLSA requires that employers ordinarily pay their employees time and
11  one-half for work in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  The
12  FLSA provides an exemption from overtime for persons "employed in a bona fide
13  executive, administrative, or professional capacity" and grants the Secretary of
14  Labor broad authority to promulgate regulations to "define[ ] and delimit [ ]" the
15  scope of the exemption.  29 U.S.C. § 213(a)(1).  It is the burden of an employer to
16  show entitlement to an exemption from the FLSA.  *Baldwin v. Trailer Inns, Inc.*,
17  266 F.3d 1104, 1112 (9th Cir. 2001).  The FLSA "is to be liberally construed to
18  apply to the furthest reaches consistent with Congressional direction.  *Id.* (citing
19  *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000).  To that end,
20  FLSA exemptions are to be narrowly construed against . . . employers and are to be
21  withheld except as to persons plainly and unmistakenly within their terms and
22  spirit." *Id.*

23     It is Defendant's contention that while employed with the Spokane County
24  Fire District No. 8, Plaintiff was employed either in an executive or administrative
25  capacity, and therefore, was exempt from the overtime requirements of the FLSA.

26     To prove Plaintiff is exempt from overtime pay, Defendant must establish
27  that Plaintiff's employment meets the requirements of the executive exemption
28  "short test" set forth in the Department of Labor regulations: (1) Plaintiff is paid on

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8**

a "salary basis"; (2) Plaintiff is paid "at a rate of not less than $250 per week . . .
exclusive of board, lodging, or other facilities"; (3) Plaintiff's primary duty consists
of the management of the enterprise in which Plaintiff is employed or of a
customarily recognized department or subdivision thereof; and (4) Plaintiff's
primary duty "includes the customary and regular direction of the work of two or
more other employees." 29 C.F.R. § 541.1(f) (2003)[2].

### A.    Salary

It is undisputed that Plaintiff meets the compensation requirement. The
following sets forth Plaintiff's yearly salary for the years 2001-2003:

| 2001 | $57,706 |
|------|---------|
| 2002 | $61,327 |
| 2003 | $64,442 |

(DSMF 3).

### B.    Primary Duty

In order to prove that Plaintiff is exempt from overtime pay, Defendant must
establish that his primary duty consisted of the management of the enterprise in
which Plaintiff was employed or of a customarily recognized department or
subdivision.  29 C.F.R. § 541.1(f).

The regulations define the terms "primary duty" and "management."
Management" involves:

> [i]nterviewing, selecting, and training of employees, setting and
> adjusting their rates of pay and hours of work; directing their work;
> maintaining their production or sales records for use in supervision or
> control; appraising their productivity and efficiency for the purpose of
> recommending promotions or other changes in their status; handling
> their complaints and grievances and disciplining them when necessary;

---

[2]The FLSA regulations were extensively amended in 2004.  Because
Plaintiff terminated his employment in January, 2004, the 2003 regulations are
applicable to the case at bar.  The regulations cited in this order are from the 2003
edition of the C.F.R.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9**

planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102.[3]

29 C.F.R. § 541.103 sets forth the standard for determining whether "management" is an employee's "primary duty":

A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are *the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.*

29 C.F.R. § 541.103 (emphasis added).

Here, Plaintiff asserts that while employed as Division/Deputy Chief, he spent at least half of his time performing numerous nonexempt duties. Defendant does not dispute this contention. Rather, Defendant argues that time spent performing nonexempt tasks does not necessarily determine whether an employee is exempt. Defendant is correct. *See Baldwin*, 266 F.3d at 1114 ("We do not presume that the executive exemption fails merely because the proportion of time spent on exempt managerial tasks is less than fifty percent.")

It is undisputed by the parties that Plaintiff performed both exempt and

---

[3]The Court gives deference to the Department of Labor's regulations interpreting the FLSA. *Baldwin*, 206 F.3d at 1112 n.4.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

nonexempt tasks.  In cases such as this, where the managerial duties are packaged in employment with non-managerial tasks, and the management function cannot readily and economically be separated from the nonexempt tasks, the circuit instructs courts to give weight to the factors set forth in the regulations, other than time spent on management duties, in determining whether Plaintiff's primary duty was management.  *Id.* at 1115.

### 1.    Time Spent on Management Duties

The Court accepts Plaintiff's assertion that he spent at least fifty percent of his time on nonexempt tasks.

### 2.    Relative Important of the Managerial Duties Compared to Other Types of Duties

The regulations instruct the Court to look at the relative importance of Plaintiff's managerial duties compared to his nonexempt duties.  The fact that Plaintiff performed some of the same tasks as his subordinates does not render the tasks nonexempt.  *Baldwin*, 266 F.3d at 1115.  Likewise, the fact that Plaintiff's subordinates may have performed some managerial tasks does not demonstrate that Plaintiff is a nonexempt employee.  *Id.*

Here, it is undisputed that Plaintiff was responsible for the majority of duties listed in 29 C.F.R. § 541.102.  Plaintiff was involved in the hiring of the employees, was responsible for the training of the employees, and directed their work.  He handled the employees' complaints and grievances, and made recommendations with regard to discipline.  He apportioned work among the employees, controlled the flow and distribution of equipment and supplies, and provided for the safety of the employees and property of SCFD No. 8.

In *Baldwin,* the circuit focused on the plaintiffs' principal value to the employer in analyzing the relative importance of the managerial duties compared to the nonexempt duties.  266 F.3d at 1115.  In that case, it concluded that the principal value to the employer was directing the day-to-day operations of the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

1  trailer park that the plaintiffs managed, even though they performed a substantial
2  amount of manual labor.  *Id. (citing Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227
3  (5th Cir. 1990)) ("At least under the short tests, the employee's primary duty will
4  usually be what she does that is of principal value to the employer, not the collateral
5  tasks that she may also perform, even if they consume more than half her time.").

6      Here, the same can be said of Plaintiff.  Plaintiff's principal value to
7  Defendant was the managing and supervising of the divisions and unit that were
8  assigned to Plaintiff.  The manual and clerical tasks that he performed were
9  undertaken in order to support Plaintiff's primary value to Defendant, which was to
10 ensure that Plaintiff's units were operating efficiently and effectively.  Thus, the
11 relative importance of Plaintiff's managerial duties compared to his nonexempt
12 duties support the executive exemption.

13              **3.    Frequency of Exercise of Discretionary Powers**

14     The Court must also consider the frequency of Plaintiff's exercise of
15 discretionary powers.  The record supports a finding that Plaintiff frequently had the
16 opportunity to exercise discretionary powers in managing his divisions.
17 Specifically, Plaintiff exercised discretion in delegating duties to others, in
18 responding to 820 calls, in budgeting, in maintaining and ordering supplies, in
19 approving the schedule and leave requests, in implementing the Wellness program,
20 and in ensuring that the EMS officers had adequate training.  Most telling of the
21 amount of discretion exercised by Plaintiff is the fact that the Chief never directed
22 Plaintiff to undertake the nonexempt tasks that Plaintiff now asserts renders his
23 employment status nonexempt.  Instead, the understanding was that these tasks
24 needed to get done, and that Plaintiff had the discretion to determine how these
25 tasks would be accomplished either by delegating the tasks to his subordinates, or
26 performing the tasks himself.  Plaintiff's frequent exercise of discretionary powers
27 support the executive exemption.

28              **4.    Relative Freedom from Supervision**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

The relative freedom from supervision is another factor the Court must weigh in determining Plaintiff's primary duty. In this case, at all times in question, Plaintiff was second-in-command. The only person who could provide supervision to Plaintiff was the Chief. Plaintiff stated that he communicated with the Chief daily, but there is nothing in the record to indicate that the Chief directed Plaintiff's day-to-day activities. Instead, the record indicates that Plaintiff determined what tasks he would accomplish in each day, without any input from the Chief. Specifically, Plaintiff stated in his answer to Interrogatory No. 6 that if he was all caught up with the day-to-day paperwork and filing, he would head out to do rounds. Sometimes he would visit all four stations, otherwise he would make it to only or two of the stations depending on what tasks or items needed attention on that particular day (Ct. Rec. 10-13, p. 157). Plaintiff also stated that he would arrive at work between 7:00 and 8:00 a.m., which demonstrates that Plaintiff had discretion when he could arrive each morning. Although Plaintiff suggests that there was some oversight by the Chief, *i.e.* at times the Chief would direct him to visit stations, there is nothing in the record that would indicate that the Chief's oversight was so rigorous or frequent as to undermine the fact that Plaintiff was substantially free from daily supervision. *See Baldwin*, 266 F.3d at 1115. Plaintiff's relative freedom from supervision supports the executive exemption.

### 5. Relationship Between Salary and Wages Paid Other Employees

The Court must also factor in the relationship between Plaintiff's salary and the wages paid to his subordinates. In this case, there is a significant difference between the exempt and nonexempt salaries. The following is breakdown of salaries of the different positions within SCFD No. 8, which was provided in Deputy Chief Vernon Blystone's declaration:

| Year | Highest Career Firefighters Wages (Nonexempt) | Lieutenant's Wages (Nonexempt) | Plaintiff's Salary (Exempt) |
|---|---|---|---|

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

| 2001 | $37,133 | $37,133 - 42,703 | $57,706 |
| 2002 | $39,361 | $39,361 - 45,265 | $61,327 |
| 2003 | $41,723 | $41,723 - 47,981 | $64,441 |

(Ct. Rec. 19).

Here, it is undisputed that Plaintiff was earning at least $15,000 more a year to perform his exempt duties. This difference between the salary of Plaintiff, an exempt employee, and the wages paid nonexempt employees supports the executive exemption.

### 6.    Occasional Tasks

The regulations recognize that an executive may occasionally perform nonexempt tasks. Specifically, 29 C.F.R. § 541.110 states:

>    (a) In addition to the type of work which by its very nature is readily identifiable as being directly and closely related to the performance of the supervisory and management duties, there is another type of work which may be considered directly and closely related to the performance of these duties. In many establishments the proper management of a department requires the performance of a variety of occasional, infrequently recurring tasks which cannot practicably be performed by the production workers and are usually performed by the executive. These small tasks when viewed separately without regard to their relationship to the executive's overall functions might appear to constitute nonexempt work. In reality they are the means of properly carrying out the employee's management functions and responsibilities in connection with men, materials, and production. The particular tasks are not specifically assigned to the "executive" but are performed by him in his discretion.
>    (b) It might be possible for the executive to take one of his subordinates away from his usual tasks, instruct and direct him in the work to be done, and wait for him to finish it. It would certainly not be practicable, however, to manage a department in this fashion. With respect to such occasional and relatively inconsequential tasks, it is the practice in industry generally for the executive to perform them rather than to delegate them to other persons. When any one of these tasks is done frequently, however, it takes on the character of a regular production function which could be performed by a nonexempt employee and must be counted as nonexempt work. In determining whether such work is directly and closely related to the performance of the management duties, consideration should be given to whether it is (1) the same as the work performed by any of the subordinates of the executive; or (2) a specifically assigned task of the executive employees; or (3) practicably delegable to nonexempt employees in the establishment; or (4) repetitive and frequently recurring.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

29 C.F.R. § 541.110.

By Plaintiff's own account, many of the various nonexempt tasks he performed were not repetitive and frequently recurring. Plaintiff stated that he did not do many of the nonexempt duties every day, but did them when they needed to be done. (Ct. Rec. 14). Specifically, Plaintiff stated that "[s]ome of the tasks, while they didn't occur often, would take more than just a few minutes or an hour a day or two, or more, to complete, and so took up quite a bit of time. Other tasks happened regularly, and even though I might spend only a few minutes at a time, I had to do the task often, sometimes every day." *Id.* Plaintiff did not specify which tasks were performed daily. In reviewing the list of nonexempt tasks, however, most of the tasks that could be performed daily are ones that are directly and closely related to the management of the divisions–maintaining records, responding to emails, and other daily clerical tasks. Also, Plaintiff did not state that he was the only one responsible for shoveling snow, cleaning bathrooms, or weeding and mowing the lawn. It is undisputed that Plaintiff performed these tasks at his discretion. The tasks listed by Plaintiff are occasional tasks that were undertaken to properly carry out Plaintiff's management responsibilities.

### 7.    Other Considerations

In his pleadings, Plaintiff relies on the fact that he actually performed job duties that were listed in six other job descriptions[4] to argue that his position as

---

[4]Several months after an on-the-job truck accident, in which he injured his back and shoulder, Plaintiff asked Chief Stout to provide him with a job description so he could talk to his doctor about whether he could perform the functions of his job to return to work at least part-time. Chief Stout sent Plaintiff seven job descriptions: Division/Deputy Chief, Emergency Medical Services Officer, Risk Manager, Maintenance Officer, Resident Firefighter Officer, Career Personnel Officer, and Part-Time Firefighter Officer.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

1    Division/Deputy Chief evolved into a non-exempt position.  Reliance on these job

2    descriptions as support for Plaintiff's contention that he was performing nonexempt

3    duties is misplaced.

4          It is undisputed that when Plaintiff was originally hired, he was responsible

5    for the EMS Division.  By 2001, Plaintiff was responsible for risk management,

6    operations, personnel, and maintenance, along with EMS (Ct. Rec. 14).  The seven

7    job descriptions represent the different responsibilities that were assigned to

8    Plaintiff.  This makes sense when looking at the job description for Division/Deputy

9    Chief.  The job description states that the Division/Deputy Chief will provide

10   administrative and management support.  Specifically, the position "will be

11   assigned responsibility of District functions *which may include*: Communications,

12   Emergency Medical Service, Fire Prevention (Fire Marshal), Maintenance

13   (Apparatus and/or Facilities), Operations, and Training. (Emphasis added).  The job

14   description also states that the Division/Deputy Chief will be assigned to supervise

15   and manage one or more divisions of District personnel *which may include*: Career

16   Firefighters and Officers, Part-Time Firefighters, Resident Firefighters, and

17   Volunteer Firefighters and Officers. (Emphasis added).  Rather than include the

18   detailed responsibilities for each of these units and divisions in the job description

19   for Division/Deputy Chief, separate job descriptions were created for each of the

20   different divisions, which could then be assigned as needed by Chief Stout.  The six

21   additional job descriptions with which Plaintiff relies are the detailed listing of the

22   duties that correspond to the department to which the Division/Deputy Chief is

23   ultimately assigned.

24          More importantly, the majority, if not all, of the duties listed in each of these

25   job descriptions describe exempt responsibilities.  None of the job descriptions list

26   nonexempt tasks, such as mowing the lawn, shoveling the snow, or changing the

27   signal lights.  Consequently, the fact that Plaintiff was responsible for duties set

28   forth in seven different job descriptions may support an argument that Plaintiff was

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 16**

1  overworked, but it does not provide support that Plaintiff was a nonexempt

2  employee.

3      Here, Plaintiff's employment with the SCFD No. 8 meets the primary duty

4  requirement of the executive exemption because Plaintiff had the authority and

5  discretion to manage his units on a day-to-day basis without supervision and control

6  from Chief Stout, notwithstanding that he may have spent more than half of his time

7  on nonexempt tasks.

8          c.      **Supervision of Two or More Employees**

9      In order to qualify for the executive exemption, Plaintiff must customarily

10  and regularly direct the work of two or more other employees. 29 C.F.R. §

11  541.1(f).

12      Plaintiff asserts that because the Chief was the chief executive and made all

13  decisions in managing the District, under the supervision of the Commissioners,

14  Defendants have not met their burden of showing that he supervised two or more

15  employees. Plaintiff's assertions are not supported by the record. Instead, the

16  record is clear that, at a minimum, Plaintiff supervised the career firefighters as well

17  as the part-time maintenance specialist, and during 2001-2003, there were more

18  than two career firefighters employed by the District. The supervision included

19  recruiting, retaining, and resolving any problems that arose. Plaintiff was also

20  responsible for ensuring optimum training for the EMS training of personnel; for

21  supervising staff assigned to assist in the effective and efficient performance of the

22  maintenance of apparatus and facilities; for supervising the resident firefighters, for

23  approving leave requests and conducting evaluations for career fire personnel on an

24  annual basis; for assigning career personnel to duty assignments which include

25  station assignments and special assignments; and for administering supervision and

26  discipline to the part-time firefighters, as required. All of these duties indicate that

27  Plaintiff was directly responsible for the supervision of two or more employees. It

28  is not necessary for Plaintiff to have final-decision making authority in order for the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 17**

1   Court to find that Plaintiff managed a unit.  *See Kastor v. Sam's Wholesale Club*,

2   131 F.Supp.2d 862, 866 (N.D. Tex. 2001) (applying precedent analyzing the

3   administrative exemption where the Fifth Circuit held that final decision-making

4   authority is not required to the executive exemption).[5]

        **d.    Conclusion**

6       Defendant has met its burden of proving that Plaintiff is an executive

7   employee who is exempt from the overtime requirements of the FLSA.  Plaintiff is

8   not entitled to overtime pay regardless of whether he worked at the station or was

9   on-call.  Thus, it is not necessary to address the parties' arguments regarding

10  whether the time Plaintiff spent on-call is compensable.

**III.    Washington Minimum Wage Act Claim**

12      Plaintiff also alleges a claim for overtime compensation under the

13  Washington State Minimum Wage Act (MWA).  The MWA requires that

14  employers ordinarily pay their employees time and one-half for work in excess of

15  forty hours per week, but also provides an exemption for individuals employed in a

_____

17      [5]In *Kastor*, the district court noted that if final decision-making authority

18  were the test for determining whether a person was an executive or administrative

19  employee, one would rarely, if ever, qualify as such an employee under the

20  regulations.  131 F. Supp. 2d at 867.  The district court reasoned that "[a] president

21  or chief executive officer of a company could say that he does not have final

22  decision-making authority because he is only authorized to carry out the policies

23  set by the board of directors, and the board of directors is free to review and veto

24  his decisions. Typically, there is a hierarchy or line of supervision in any corporate

25  entity or business wherein managers and supervisors have persons to whom they

26  must report, and that an individual does not have final supervisory or discretionary

27  authority does not take that person out of the realm of being a manager or

28  supervisor in the company or business."  The Court finds this analysis persuasive.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18**

bona fide executive, administrative, or professional capacity. Wash. Rev. Code §§ 49.46.010; 49.46.130. Generally, Washington courts follow federal law when addressing issues under MWA. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash. 2d 853, 862 n.6 (2004) ("The FLSA is persuasive authority because the MWA is based on the FLSA. Like the MWA, the FLSA requires overtime pay of one and one-half times the regular rate for every hour worked beyond 40." (Citations omitted)).

At the hearing, Plaintiff agreed that resolution of his Washington Minimum Wage Act claim is dependant on the resolution on his FLSA claim.[6] Because the Court concludes that Plaintiff is an exempt employee under the FLSA, he is also an exempt employee under the MWA, and therefore, is not entitled to overtime pay.

## IV.    Breach of Contract Claim

Defendant asserts that Plaintiff's breach of contract claim should be dismissed as a matter of law because Plaintiff's only avenue for collecting overtime compensation is under the FLSA.[7] The Court agrees. Claims that are directly covered by the FLSA (such as overtime claims) must be brought under the FLSA. *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000). Plaintiff's claim for breach of contract for overtime pay is preempted by the FLSA.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (Ct. Rec. 10) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment in favor of Defendant.

---

[6]In his response to Defendant's Motion for Summary Judgment, Plaintiff did not address separately Defendant's arguments that summary judgment is appropriate for his Washington Minimum Wage Act claim; rather Plaintiff incorporated his arguments to apply to both the FLSA and the MWA.

[7]In his response to Defendant's Motion for Summary Judgment, Plaintiff did not address Defendant's arguments that summary judgment is appropriate for his breach of contract claims.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19**

1    **IT IS SO ORDERED.**  The District Court Executive is hereby directed to

2    enter this Order, furnish copies to counsel, and close the file.

3    **DATED** this 11th day of September, 2006.

4

5    *s/ Robert H. Whaley*

6    ROBERT H. WHALEY
     Chief United States District Judge

7

8

9

10

11    Q:\CIVIL\2005\Frey\sj.order.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 20**